IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| MARGARET ALLGOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19-2323-JTF-tmp |
| | ) | |
| BAPTIST MEMORIAL MEDICAL | ) | |
| GROUP, INC., and BAPTIST | ) | |
| MEMORIAL HEALTH CARE | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION TO COMPEL**

Before the court by order of reference is Margaret Allgood's motion to compel certain discovery responses from Baptist Memorial Medical Group, Inc. and Baptist Memorial Health Care Corporation (collectively "Baptist"). (ECF Nos. 32 & 33.) For the reasons outlined below, the motion is GRANTED in part and DENIED in part.

### I. BACKGROUND

This is a False Claims Act retaliation suit. Allgood alleges that she was suspended with pay for four months by Baptist because she reported Medicare billing fraud by Dr. John King, a doctor at Baptist. Baptist contends Allgood was suspended as part of an investigation into whether she accessed patient records in violation of the Health Insurance Portability and Accountability Act ("HIPAA"). Allgood concedes she accessed HIPAA-protected

records but argues she did so only to report fraud internally, which is allowed by HIPAA, and that the suspension was pretextual.

The parties disagree about whether certain discovery requests are relevant and proportional to the needs of the case. Most of the disputed discovery requests can be grouped into two categories: (1) requests about whether Baptist committed billing fraud and (2) requests about Baptist's investigation into Allgood's purportedly unauthorized access to patient records. Allgood contends that this information is relevant because it goes to pretext while Baptist argues otherwise. The parties also dispute various other discovery issues, including: (1) requests about the termination of another employee, Kathy Long, who allegedly also reported misconduct by Dr. King; (2) requests about Dr. King's background and subsequent resignation from Baptist; (3) requests about HIPAA and False Claims Act compliance training; and (4) a request for all communications about Allgood from the date Allgood claims she learned of the billing fraud to shortly before her suspension.

## II. ANALYSIS

### A. Scope of Discovery

The scope of discovery is governed by Federal Rule of Civil Procedure 26(b)(1), which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The party seeking discovery is

obliged to demonstrate relevance. Johnson v. CoreCivic, Inc., No. 18-CV-1051-STA-tmp, 2019 WL 5089086, at \*2 (W.D. Tenn. Oct. 10, 2019). Upon a showing of relevance, the burden shifts to the party opposing discovery to show, with specificity, why the requested discovery is not proportional to the needs of the case. William Powell Co. v. Nat'l Indem. Co., No. 1:14-CV-00807, 2017 WL 1326504, at \*5 (S.D. Ohio Apr. 11, 2017), aff'd *sub nom.* 2017 WL 3927525 (S.D. Ohio June 21, 2017), and modified on reconsideration, 2017 WL 4315059 (S.D. Ohio Sept. 26, 2017). Six factors are relevant to proportionality: (1) "the importance of the issues at stake in the action;" (2) "the amount in controversy;" (3) "the parties' relative access to relevant information;" (4) "the parties' resources;" (5) "the importance of the discovery in resolving the issues;" and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

**B.   False Claims Act Retaliation**

The False Claims Act "'is an anti-fraud statute prohibiting the knowing submission of false or fraudulent claims to the federal government.'" Fakorede v. Mid-S. Heart Ctr., P.C., 182 F. Supp. 3d 841, 848 (W.D. Tenn. 2016). It is unlawful to retaliate against an employee who engages in "lawful acts" to attempt to stop what the employee believes in good faith to be a violation of the False

Claims Act.[1] Miller v. Abbott Labs., 648 F. App'x 555, 560 (6th Cir. 2016). "[C]ollecting information about potential fraud" is protected activity under this provision. Id.

Retaliation claims under the False Claims Act "proceed under the same rules applicable to other employment-related retaliation claims." Jones-McNamara v. Holzer Health Sys., 630 F. App'x 394, 397–98 (6th Cir. 2015). "To establish a prima facie case, the plaintiff must show the following elements: (1) she was engaged in a protected activity; (2) her employer knew that she engaged in the protected activity; and (3) her employer discharged or otherwise discriminated against the employee as a result of the protected activity." Id. After the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to give a legitimate, non-discriminatory reason for the adverse employment action. Id. The plaintiff then has the burden to show that the defendant's proffered reason is pretextual. Id.

**C. State Privilege Law**

---

[1]At one point in its briefing, Baptist appears to suggest that the plaintiff's burden is lower than this, that is, that the plaintiff need not show she has a good faith basis to believe there was a violation of the False Claims Act. (ECF No. 39 at 17.) This is a mistaken understanding of the relevant law. See Miller v. Abbott Labs., 648 F. App'x 555, 560 (6th Cir. 2016) ("'[A]lthough the plaintiff need not establish that [the employer] actually violated the FCA, she must show that her allegations of fraud grew out of a reasonable belief in such fraud.'") (internal alterations omitted) (quoting Jones-McNamara v. Holzer Health Sys., 630 F. App'x 394, 400 (6th Cir. 2015)).

Baptist first argues that T.C.A. § 68-11-272(c)(1) protects much of the requested discovery from disclosure. T.C.A. § 68-11-272(c)(1) creates a state law privilege for Quality Improvement Committees ("QICs") created by healthcare providers to, among other things, make sure healthcare providers are in compliance with state and federal law. It protects the "records" of QICs, as well as statements made to QICs during an investigation. T.C.A. § 68-11-272(c)(1). The purpose of this privilege is to allow healthcare organizations to freely examine how they can improve their services without fear that candid statements will be used against them. Pinkard v. HCA Health Servs. of Tennessee, Inc., 545 S.W.3d 443, 452 (Tenn. Ct. App. 2017).

"[I]n federal question cases, state privilege law does not apply." LeMasters v. Christ Hosp., 791 F. Supp. 188, 189 (S.D. Ohio 1991). Baptist has not identified any caselaw that suggests federal privilege law recognizes a parallel privilege to the one established by T.C.A § 68-11-272(c)(1). Indeed, federal courts have repeatedly held no parallel federal privilege exists. Coone v. Chattanooga-Hamilton Cty. Hosp. Auth., No. 1:16-CV-481, 2017 WL 9476830, at *4 (E.D. Tenn. May 18, 2017); Levans v. Saint Francis Hosp.-Bartlett, Inc., No. 15-CV-2142-SHL-tmp, 2015 WL 11017962, at *3 (W.D. Tenn. Sept. 18, 2015); United States v. Jackson Madison Cty. Gen. Hosp., No. 12-2226, 2012 WL 12899055, at *3 (W.D. Tenn.

Oct. 16, 2012). Because this is a federal question case, T.C.A. § 68-11-272(c)(1) does not apply.

**D. Billing Fraud**

Baptist objects to the requested discovery about whether it engaged in billing fraud. Allgood, Baptist asserts, does not need to prove that Baptist defrauded the government, only that she was punished for reporting fraud. As a result, Baptist contends the sought-after discovery is irrelevant and not proportional to the needs of the case.

"[E]vidence of motive is extremely relevant in the pretext analysis." Dilback v. Gen. Elec. Co., No. CIV.A 4:00-CV-222, 2008 WL 4372901, at *4 (W.D. Ky. Sept. 22, 2008). As a result, evidence that a company engaged in fraud is relevant to whether it punished an employee for reporting fraud. Id. "It should be obvious that a company with real misconduct to hide would have more motive to terminate a whistle-blowing employee than would a company with clean hands." Blakeslee v. Shaw Infrastructure, Inc., No. 3:09-CV-0214-RRB, 2010 WL 2985812, at *2 (D. Alaska July 27, 2010). Whether Baptist engaged in billing fraud is thus relevant to whether Baptist punished Allgood for reporting billing fraud.

Baptist distinguishes Dilback and Blakeslee by pointing out that those cases were decided before the 2015 amendments to Rule 26, and thus use outdated language when defining the scope of discovery — whether the evidence "may be relevant" or is

"reasonably calculated to lead to the discovery of relevant evidence[.]" 2008 WL 4372901 at *4; 2010 WL 2985812 at *2. But the 2015 amendments did not "change the basic principle that Rule 26 is to be liberally construed to permit broad discovery." Durand v. Hanover Ins. Grp., Inc., No. 3:07-CV-00130-HBB, 2016 WL 9458551, at *2 (W.D. Ky. Oct. 27, 2016). Even under the current rule, the information sought is relevant.

In passing, Baptist argues that the sought-after discovery is not proportional to the needs of the case. But Baptist does not articulate any specific way that this discovery would be disproportionate — its position is that because the information sought is irrelevant, any discovery on this issue is necessarily disproportionate. However, the information is relevant, and the court has not found any deficiencies in the disputed requests. The motion to compel is GRANTED as to Requests for Production 1, 2, 3, 4, 24, 25, 26, 29, 36, 37, and 38 as well as Interrogatories 1, 2, and 17.[2]

**E.    HIPAA Violations**

Baptist objects to the requested discovery regarding its investigation into Allgood's access to patient records. Baptist

---

[2] In Baptist's briefing, it quotes certain discovery requests that Allgood has not sought to compel. The court emphasizes that it is only granting the motion to compel as to the requests Allgood has actually sought to compel and only to the extent identified in this order.

concedes that Allgood did not violate HIPAA. As a result, Baptist avers that information about the investigation into whether Allgood violated HIPAA is irrelevant. Allgood disputes whether it is clear that Baptist is conceding that she did not violate HIPAA, and further argues that the sought-after discovery is relevant to whether Baptist's investigation was pretextual. Baptist further argues the information sought is disproportional to the needs of the case because it would involve the disclosure of personal health information.

Regardless of whether Baptist concedes that Allgood did not violate HIPAA, Allgood still needs to show the investigation of her access to patient records was pretextual in order to prevail. Evidence about the investigation is relevant to whether the investigation was pretextual. If Baptist did not actually investigate Allgood's purported HIPAA violation — or if it did, but only in a cursory way — it may tend to show Allgood's suspension was pretextual. Similarly, if there is little evidence that Allgood violated HIPAA, it may tend to show that Allgood's suspension was pretextual. In contrast, if there is evidence that Baptist investigated Allgood's access to patient records thoroughly during her suspension, it may tend to show the investigation was not pretextual. The information sought is thus relevant.

As for proportionality, the court has already entered a protective order regarding personal health information that may be

disclosed in the course of this case. (ECF No. 30.) The privacy interests of patients at Baptist are thus reasonably protected. Given that Allgood has shown a strong need for information about the investigation, the court concludes that Baptist's concerns about patient privacy do not make the discovery disproportional to the needs of the case. Baptist has not made more specific objections to this discovery on proportionality grounds, and the court has not found any deficiencies in the disputed requests. The motion to compel is GRANTED as to Requests for Production 7, 8, 9, 10, 11, 12, 13, 14, 18, 19, 22, 23, 35, and 45.[3]

**F.  Requests About Kathy Long**

The parties also dispute whether discovery requests about Kathy Long, a former employee at Baptist working with Dr. King, are relevant. In Allgood's complaint, Long is identified as a comparator who accessed the same files that Allgood did, but did not report billing fraud, and was not investigated for wrongdoing. (ECF No. 1 at 10 ¶ 30.) In support of her motion to compel, Allgood makes a different argument as to why information about Long is relevant to this case. Allgood claims that Long reported Dr. King for making abusive statements to her in April 2019, and that Long was fired by Baptist shortly thereafter. This, Allgood argues,

---

[3]The court again emphasizes that it is only granting the motion to compel as to the requests Allgood has actually sought to compel and only to the extent identified in this order.

shows a pattern by Baptist of punishing employees who report misconduct by Dr. King. Allgood also contends that some of the abusive statements Dr. King made towards Long concerned Allgood. Baptist does not address Allgood's second argument about relevance, but does argue that Long is not an appropriate comparator because Baptist was unaware she accessed patient files.

Evidence of an employer's treatment of other employees is often relevant to an employer's motive in acting against a plaintiff. Griffin v. Finkbeiner, 689 F.3d 584, 600 (6th Cir. 2012). Here, both Long and Allgood allegedly reported misconduct by Dr. King and faced suspension or termination shortly afterwards. Evidence about the reasons for Long's termination could shed light on Baptist's motive for suspending Allgood.

Evidence about whether Long was investigated for accessing the same patient files as Allgood is also relevant. The right to discovery of comparator evidence is not unlimited and must be balanced against the need to appropriately limit discovery. See Terrell v. Memphis Zoo, Inc., No. 17-CV-2928-JPM-tmp, 2018 WL 3245003, at *7 (W.D. Tenn. July 3, 2018). However, "[t]he refusal of a defendant to disclose requested comparator information denies plaintiff the opportunity to determine whether the evidence actually reveals comparator status and different treatment, critical elements of the claim that the trier of fact must

determine." Bobo v. United Parcel Serv., Inc., 665 F.3d 741, 753 (6th Cir. 2012).

It may be that the evidence will ultimately show that Long is not an appropriate comparator to Allgood. But "whether the evidence actually reveals comparator status" is a question for "the trier of fact" to decide, not one that Baptist may resolve unilaterally by refusing to provide comparator evidence. Id. Evidence about whether Long was punished for accessing the same patient files as Allgood is thus relevant and proportional. The motion to compel is GRANTED as to Requests for Production 16 and 40 and Interrogatory 20.

**G.  Requests About Dr. John King**

The disputed requests about Dr. King can be grouped into three categories: (1) requests about the circumstances surrounding Dr. King's termination from Baptist; (2) requests about the formation of Dr. King's new practice and Baptist's possible financial stake in that practice; and (3) requests about past complaints involving Dr. King. Baptist disputes the relevance and proportionality of this discovery.

The reasons for Dr. King's termination from Baptist are significant to this case. That Dr. King was accused of billing fraud, Baptist investigated the claims of billing fraud and concluded Dr. King overbilled the government, and then terminated Dr. King's employment with Baptist all suggests a causal link

between the allegations of billing fraud and Dr. King's termination. As discussed earlier, whether Baptist engaged in billing fraud is relevant to whether Allgood was punished for reporting billing fraud. The motion to compel is GRANTED as to Requests for Production 50 and Interrogatory 21.

Allgood suggests that information about the formation of Dr. King's new practice, and Baptist's financial stake in it, is relevant because it goes to "the sincerity of Baptist's offer to reinstate Allgood and ongoing hostility between Baptist and Allgood." (ECF No. 32 at 15.) It is true that hostility between a former employee and employer can sometimes affect the scope of remedies in an employment discrimination suit because hostility may make reinstatement an impractical remedy. See Hollimon v. Shelby Cty. Gov't, No. 2:03-CV-02919, 2008 WL 11432204, at *1 (W.D. Tenn. Aug. 25, 2008). But the concern in such cases is about personal hostility between the employer and employee, not attenuated hostility from someone who runs a business the employer happens to have an investment in. The motion to compel is DENIED as to Requests for Production 51 and 52.

This leaves the discovery disputes about past complaints involving Dr. King. If other employees complained about Dr. King and were retaliated against, that arguably might be probative of Baptist's motive in suspending Allgood. However, the court finds that this discovery falls beyond the scope of Rule 26. Allgood

seeks information about complaints stretching back to the beginning of Dr. King's employment at Baptist. There is no reason to think such remote information has much bearing on this case. Allgood also seeks information about Baptist's communications with a state licensing board regarding Dr. King. But there is no reason other than speculation to think communications with the state licensing board would have relevance to the issues at hand here. The motion to compel is DENIED as to Request for Production 34 and 49 and Interrogatory 19.

**H.    Training Materials**

Allgood seeks to compel production of training materials about HIPAA and False Claims Act compliance "in effect as of October 6, 2018."

It is unclear why training materials about HIPAA and False Claims Act compliance would be relevant to this case. These requests are also worded in a way that would make the process of identifying responsive documents needlessly complicated and that would capture a large amount of irrelevant information. The request seeks those materials "in effect as of October 6, 2018," a term without an obvious meaning. The request is also not limited geographically, meaning Baptist — which operates hospitals and clinics across the mid-South — would have to produce materials from facilities with no connection to Allgood or anyone else involved in this case. Given that it is unclear what relevance

this discovery has on the case as a general matter, the requests are not proportional to the needs of the case. The motion to compel is DENIED as to Requests for Production 44 and 47.

I. **Communications Concerning Allgood**

Allgood seeks "[a]ll documents and ESI reflecting communications concerning Allgood from March 28, 2018, through October 1, 2018." Allgood argues this discovery is relevant and proportional because Allgood learned that Dr. King was committing billing fraud on March 28 and told another nurse about her suspicions in April. After this, Allgood claims a supervisor at Baptist ordered her to apologize to Dr. King for telling another nurse she suspected Dr. King was committing billing fraud. Allgood posits communications about Allgood during this period can shed light into Baptist's motive in suspending her later. Baptist objected to this Request for Production on the grounds (lightly paraphrased) that it was vague, irrelevant, not proportional to the needs of the case, and sought information protected by the attorney-client privilege. Baptist did not address this Request for Production in its briefing.

Though the requested discovery seeks a broad range of information, it is limited to a specific time range where there is likely to be relevant evidence and is about a single employee. Furthermore, the timeline of events is important here. The False Claims Act protects employees when they are "collecting

information about potential fraud[.]" Miller, 648 F. App'x at 560. What Baptist knew about Allgood's investigation of Dr. King and when it knew it may be relevant to the question of whether her suspension was pretextual. The motion to compel is GRANTED as to non-privileged documents and ESI responsive to Request for Production 32.

### III. CONCLUSION

For the reasons above, the motion to compel is GRANTED in part and DENIED in part. Baptist shall provide discovery responses under this order within thirty days.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

January 7, 2020
Date
